SCANNED                                    FILE COPY

KEMNITZER, BARRON & KRIEG, LLP
BRYAN KEMNITZER          Bar No. 066401
NANCY BARRON             Bar No. 099278
ADAM J. McNEILE          Bar No. 280296
445 Bush St., 6th Floor
San Francisco, CA 94108
Telephone: (415) 632-1900
Facsimile: (415) 632-1901
bryan@kbklegal.com
nancy@kbklegal.com
adam@kbklegal.com

Attorneys for Plaintiff JOHN LEGNAIOLI and the putative class

FILED
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

MAR 0 5 2015

BY _____
VANESKA DIEDERICH, DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN BERNARDINO

| | |
|---|---|
| JOHN LEGNAIOLI, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHRYSLER CAPITAL LLC; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.   CIVDS1503076<br><br>CLASS ACTION<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, AND DAMAGES FOR VIOLATIONS OF THE REES-LEVERING AUTOMOBILE SALES FINANCE ACT, CIVIL CODE § 2981, *ET SEQ.*, AND THE UNFAIR COMPETITION LAW, BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.***<br><br>Unlimited Civil Case<br><br>JURY TRIAL DEMANDED |

FAXED

1.    Plaintiff JOHN LEGNAIOLI, individually, and on behalf of others similarly situated, hereby complains against Defendant CHRYSLER CAPITAL LLC (hereinafter "CHRYSLER CAPITAL"); and DOES 1 through 50, inclusive, and on information and belief, allege as follows:

## PRELIMINARY STATEMENT

2.      Plaintiff brings this action under the Unfair Competition Law (Business &
Professions Code § 17200 *et seq.*), the Rees-Levering Automobile Sales Finance Act, Civil Code
§ 2981 *et seq.* (hereinafter "Rees-Levering Act"), and other applicable laws, to challenge the
unlawful, unfair and deceptive practices of CHRYSLER CAPITAL, following repossession of
Plaintiff's motor vehicle under a conditional sales contract.  In particular, CHRYSLER
CAPITAL failed to provide Plaintiff with a statutorily-mandated notice of his legal rights and
obligations after repossession of his motor vehicle.  CHRYSLER CAPITAL wrongfully deprived
Plaintiff of his right to reinstate or redeem his conditional sales contract after repossession,
negligently and/or fraudulently misrepresented the rights and obligations of the parties following
repossession, collected, or sought to collect, a deficiency from Plaintiff following repossession
for which Plaintiff is not liable as a matter of law, and upon information and belief as to the
putative class, sought and obtained deficiency judgments knowing that such judgments are
unlawful, and unlawfully and falsely reported borrowers' deficiency balances to credit reporting
agencies as past due debts when collection of said amounts is in fact unlawful.  Plaintiff seeks
appropriate relief, as well as attorneys' fees, costs and expenses.

## PARTIES

3.      Plaintiff JOHN LEGNAIOLI is an individual over the age of 18 years.  At all
times relevant herein, JOHN LEGNAIOLI was, and currently is, a resident of the State of
California, County of San Bernardino.

4.      Defendant CHRYSLER CAPITAL is a corporation which, at all times relevant
herein, was licensed to do business and was conducting business in the State of California and
the County of San Bernardino.  CHRYSLER CAPITAL is engaged in the business of providing
financing to purchasers of automobiles, and in debt collection on such accounts.

## DOE DEFENDANTS

5.      Defendants DOES 1 through 50 are persons or entities whose true names and
capacities are presently unknown to Plaintiff and who therefore are sued by such fictitious
names. Plaintiff is informed, believes, and thereon alleges that each of the fictitiously named

Defendants perpetrated some or all of the wrongful acts alleged herein-below, are responsible in some manner for the matters alleged herein, and are jointly and severally liable to Plaintiff. Plaintiff will seek leave of court to amend this complaint to state the true names and capacities of such fictitiously named Defendants when ascertained.

## AGENCY

6.      Plaintiff is informed, believes, and thereupon alleges that at all times mentioned herein each Defendant, whether actually or fictitiously named, was the principal, agent (actual or ostensible), or employee of each other Defendant.  In acting as such principal or within the course and scope of such employment or agency, each Defendant took some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiff and to the members of the class for the relief prayed for herein.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Plaintiff's claims because Plaintiff is a resident of California and CHRYSLER CAPITAL is qualified to do business in California.

8.      Defendant CHRYSLER CAPITAL conducts business within San Bernardino County and has not designated with the California Secretary of State a principal place of business within the State of California pursuant to Corporations Code § 2105(a)(3). Accordingly, Defendant CHRYSLER CAPITAL can be sued in any county in the state of California, including San Bernardino County.

9.      This Court is the appropriate venue for the Rees-Levering Act claim because Plaintiff was resident of San Bernardino County at the time the relevant contract was signed by Plaintiff, and Plaintiff continues to reside in San Bernardino County.  Cal. Civ. Code § 2984.4(a).

## OPERATIVE FACTS

### Purchase and Repossession of the Legnaioli 2014 Dodge Dart

10.      Plaintiff JOHN LEGNAIOLI was a co-signer for the purchase of a new 2014 Dodge Dart on June 14, 2014 from Crystal Chrysler Jeep Dodge.  The dealership arranged financing for the purchase, and assigned the conditional sale contract to CHRYSLER CAPITAL.

The 2014 Dodge Dart sales contract is attached and marked as **Exhibit A**.

11.     Plaintiff JOHN LEGNAIOLI made a payment on the loan to CHRYSLER CAPITAL. The conditional sale contract (a "Form Agreement") is regulated by the Rees-Levering Act, and provided that the holder of the contract is subject to all claims and defenses that the consumer could assert against the seller.

12.     CHRYSLER CAPITAL repossessed JOHN LEGNAIOLI's 2014 Dodge Dart in December 2014.   CHRYSLER CAPITAL mailed JOHN LEGNAIOLI a written document dated December 11, 2014, titled "Notice of Intention to Dispose of Motor Vehicle," stating that the 2014 Dodge Dart had been repossessed and would be sold unless they redeemed the vehicle by paying $3,231.16 (**Exhibit B**).  However, CHRYSLER CAPITAL's Statutory Notice did not contain several of the disclosures mandated by Civil Code §§ 2983.2(a)(1)-(a)(9).

13.     JOHN LEGNAIOLI was unable to recover his 2014 Dodge Dart. JOHN LEGNAIOLI is informed and believes, and on that basis alleges, that CHRYSLER CAPITAL sold the vehicle and assessed a deficiency of $14,765.23 against JOHN LEGNAIOLI (**Exhibit C**). CHRYSLER CAPITAL then represented to JOHN LEGNAIOLI that he owed a deficiency balance when in fact he did not because of CHRYSLER CAPITAL's noncompliance with the Rees-Levering Act.

14.     JOHN LEGNAIOLI has suffered injury in fact and has lost money or property as a result of the unlawful, unfair and fraudulent acts and practices of CHRYSLER CAPITAL asserted herein. Specifically, because Plaintiff could not recover his vehicle, he no longer has a vehicle.  He has spent a considerable amount of time on his cell phone attempting to get information from CHRYSLER CAPITAL regarding the amount necessary to reinstate the contract. He has paid for postage for certified mail. He has driven to the dealership to obtain copies of the contract and additional paperwork and he has had to pay for public transportation to meet with attorneys in order to protect his rights. He has also attempted to apply for credit but as a result of the repossession on his credit report he has been denied credit.  Plaintiff has paid money to acquaintances to take him to various places, he has attempted to rent cars, but cannot rent cars because he does not have a credit card, and his credit has been damaged.

### The Rees-Levering Act

15.     Plaintiff's right to a particularized notice after repossession is established by the provisions of the Rees-Levering Act.  The Rees-Levering Act regulates the repossession and disposition of motor vehicles financed under conditional sale contracts in California, and, among other provisions, imposes strict requirements upon holders of conditional sale contracts, such as CHRYSLER CAPITAL, following a repossession.

16.     In order to protect consumers' valuable property interests in financed vehicles, and afford buyers a full opportunity to make an informed decision as to whether to exercise their statutory right to redemption or reinstatement, the Rees-Levering Act requires the seller or holder of the contract to issue a detailed Statutory Notice to the buyer following repossession.  Civil Code § 2983.2 specifies the precise information and disclosures that must be included in the Statutory Notice to comply with the law.

17.     Absent strict compliance with the mandatory requirements for the Statutory Notice, a seller or holder may not lawfully collect any deficiency from any person liable under a Form Agreement following disposition of the repossessed vehicle.  The Rees-Levering Act specifically provides that those persons "shall be liable for any deficiency only if the notice prescribed" contains "all" of the disclosures mandated by the statute. Civil Code § 2982.2(a).

18.     The Rees-Levering Act further specifies that no seller or holder may obtain a deficiency judgment, and "no deficiency judgment shall lie in any event," against a person otherwise liable under a Form Agreement after the repossession and disposition of a vehicle unless a court has determined, upon the affidavit of the seller or holder, or a hearing if the court so requires, that the sale or other disposition was in conformity with the provisions of the Rees-Levering Act. Civil Code § 2983.8.

19.     The Statutory Notice that CHRYSLER CAPITAL issued Plaintiff following the repossession of the 2014 Dodge Dart (**Exhibit B**) was materially defective, incomplete, and failed to inform Plaintiff of all of his legal rights and obligations.

20.     Specifically, the Statutory Notice sent by CHRYSLER CAPITAL fails to comply with the strict requirements of the Rees-Levering Act for the reasons set forth below:

**(a) Violation of Civil Code § 2983.2(a)(1), Regarding the Consumer's Right to Redeem the vehicle**

Consumers are only liable for deficiency balances if the Statutory Notice (NOI) sets forth that those persons shall have a right to redeem the motor vehicle by paying in full the indebtedness evidenced by the contract until the expiration of 15 days from the date of giving or mailing the notice and provides an itemization of the contract balance and of any delinquency, collection or repossession costs and fees and sets forth the computation or estimate of the amount of any credit for unearned finance charges or canceled insurance as of the date of the notice, Civil Code § 2983.2(a)(1).

The CHRYSLER CAPITAL NOI fails to comply with the requirements of this provision because it fails to set forth the computation of the estimate for the GAP insurance refund. The NOI states that the amount owing for redemption will be "less any unearned insurance charge." The underlying contract (**Exhibit A**) contains a charge for GAP insurance, however, the NOI fails to state the deduction for the unearned (pro-rated) insurance refund to which the consumer is entitled for the GAP insurance. The NOI fails to state the amount or apply any credit due for the GAP cancellation, thus resulting in incomplete and inaccurate information as to the amount actually due to redeem.

**(b) Violation of Civil Code § 2983.2(a)(2), Regarding the Consumer's Right to Reinstate the Contract.**

Consumers owe deficiency balances only if the Statutory Notice "[s]tates either that there is a conditional right to reinstate the contract until the expiration of 15 days from the date of giving or mailing the notice and all the conditions precedent thereto or that there is no right of reinstatement and provides a statement or reasons therefore."

CHRYSLER CAPITAL's NOI fails to comply with the requirements of this section because it fails to state all of the "conditions precedent" to reinstatement. Specifically, the NOI fails to strictly comply with this provision because it:

    i.    Fails to set forth the date the next payment that will come due during the reinstatement period. The NOI states "payment(s) to come due" and lists an

amount of $637.19 but does not set forth the date it will become due. "The creditor must also inform the buyer regarding *any additional monthly payments that will come due* before the end of the notice period, as well as of any late fees, or other fees, the amount(s) of these additional payments or fees, *and when the additional sums will become due.*" *Juarez v. Arcadia Financial, Ltd.* (2007) 152 Cal.App.4th 889, 905. The NOI fails to state "*when the additional* [payment] *will become due*" (emphasis added).

ii. Fails to set forth the actual location of the vehicle. The notice provides as follows: "Location of Storage: CA-92262 Palm Springs, 2050 Executive Drive Ste. D, Palm Springs, CA 92262." The car was actually located at Manheim Southern California, 10700 Beach Ave., Fontana, CA.

iii. Fails to disclose that a flat fee of $259.00 is payable to Manheim Southern California to get the car back. "[I]n requiring creditors to state 'all the conditions precedent' to reinstatement, the Legislature intended that creditors provide sufficient information to defaulting buyers to enable them to determine precisely what they must do in order to reinstate their contracts." *Juarez v. Arcadia Financial, Ltd.* (2007) 152 Cal.App.4th 889, 899. The CHRYSLER CAPITAL NOI fails to do this and thus violates § 2983.2(a)(2) because it requires consumers to make further inquiry as opposed to setting forth the exact amount needed to reinstate on any particular day and the precise location where the car is located.

**(c) Violation of Civil Code § 2983.2(a)(4), Regarding location of where the vehicle is to be picked up upon redemption or reinstatement.**

Financial institutions are required to "disclose the place at which the motor vehicle will be returned to those persons upon redemption or reinstatement."

The CHRYSLER CAPITAL NOI provides that the "Location of Storage: CA-92262 Palm Springs, 2050 Executive Drive Ste. D, Palm Springs, CA 92262." That address does not identify the location where the car can be picked up and, in fact, is not where Plaintiff's vehicle was located. Plaintiff's vehicle was at Manheim Southern California, located at 10700 Beach Avenue in Fontana, California.

The CHRYSLER CAPITAL NOI therefore fails to disclose the actual place where the vehicle will be returned as required by Civil Code §2983.2(a)(4).

21.   The NOI also violates other provisions of Civil Code §2983.2(a) not detailed herein.

///

22.     Plaintiff is informed, believes, and on that basis alleges, that the defective and improper Statutory Notice CHRYSLER CAPITAL issued was a standard form notice sent by CHRYSLER CAPITAL, at least from four years preceding the filing of this action, and continuing thereafter, as a common practice and procedure, to numerous other California borrowers whose vehicles were repossessed.

23.     Plaintiff is informed, believes, and on that basis alleges, that the defective and improper Statutory Notice CHRYSLER CAPITAL issued was a standard form notice whose contents were filled out by CHRYSLER CAPITAL employees according to guidelines and policies that failed to comply with the law.

24.     The defective and improper Statutory Notices issued to Plaintiff and members of the class purportedly pursuant to Civil Code § 2983.2, deprived them of the statutorily-mandated notice, and are standard notices sent by CHRYSLER CAPITAL as a practice and procedure common to all persons who are parties to conditional sale contracts and whose vehicles were repossessed.

25.     Plaintiff is informed, believes, and on that basis alleges, notwithstanding CHRYSLER CAPITAL's failure to comply with the mandatory Statutory Notice requirements of the Rees-Levering Act, CHRYSLER CAPITAL has assessed, demanded, attempted to collect, and collected deficiency balances from borrowers, including from Plaintiff, for which the borrowers were not liable as a matter of law and which CHRYSLER CAPITAL has no legal right to demand or to collect.

26.     In the four years preceding the filing of this action, and continuing thereafter, CHRYSLER CAPITAL has made unlawful collection demands to Plaintiff and other California borrowers, has falsely represented to such borrowers that deficiency balances were owed, has collected thousands of dollars from such borrowers to which it was not entitled, and has threatened to sue, and has sued, borrowers who did not owe any deficiency as a matter of law.

27.     At all relevant times, CHRYSLER CAPITAL has had actual and/or constructive knowledge that such borrowers were not liable for any deficiency balance as a matter of law as a result of its failure to comply with the Rees-Levering Act, but has nevertheless persisted in its

unlawful collection activity.

28.     Plaintiff is informed, believes, and on that basis alleges that CHRYSLER CAPITAL and/or its agents regularly report or communicate to consumer credit reporting organizations that purported deficiencies following disposition of vehicles pursuant to the unlawful practices described herein are valid debts when, in fact, Plaintiff and other similarly situated persons are not liable for deficiencies as a matter of law.  At all relevant times CHRYSLER CAPITAL has had actual and constructive knowledge that such persons are not liable for deficiencies.

## CLASS ACTION ALLEGATIONS

29.     This action has been brought and be properly maintained as a class action pursuant to California Code of Civil Procedure § 382.

30.     Plaintiff brings this class action on behalf of himself and all other persons similarly situated.  Plaintiff brings this action in a representative capacity to remedy the ongoing unlawful, unfair and fraudulent business practices alleged herein, and to seek redress on behalf of all those persons who have been affected thereby.

31.     Plaintiff is unable to state the precise number of potential members of the proposed class because that information is in the possession of CHRYSLER CAPITAL.  It consists of at least hundreds, if not thousands of members, and is so numerous that joinder of all members would be impracticable.  The exact size of the proposed class, and the identity of the members thereof, will be readily ascertainable from the business records of CHRYSLER CAPITAL.

32.     The class on whose behalf this Complaint is brought is composed of all consumers:

    (a)    who purchased a motor vehicle and, as part of that transaction, entered into an agreement subject to California's Rees-Levering Automobile Sales Finance Act, Civil Code § 2981, *et seq.*;

    (b)    whose motor vehicle was repossessed or voluntarily surrendered;

    (c)    who were sent an NOI by CHRYSLER CAPITAL from four years

Complaint for Injunctive Relief, Restitution, and Damages

preceding the filing of this action to the present; and

    (d)    against whose account a deficiency balance was assessed.

33.    The Class Definition is subject to such further definition, limitations, and exclusions as may be ordered by the Court.

34.    There is a community of interest among the members of the proposed class in that there are questions of law and fact common to the proposed class that predominate over questions affecting only individual members. Proof of a common set of facts will establish the liability of Defendant, and the right of each member of the class to recover.

35.    The common questions which predominate include, *inter alia*:

    (a)    whether CHRYSLER CAPITAL failed to provide to individuals whose motor vehicles were repossessed a Statutory Notice containing all of the disclosures required by the Rees-Levering Act;

    (b)    whether such conduct constituted a breach of contract;

    (c)    whether CHRYSLER CAPITAL collected, or has attempted to collect, deficiency balances from members of the proposed class that it had no legal right to obtain or attempt to collect;

    (d)    whether CHRYSLER CAPITAL negligently and/or fraudulently misrepresented to borrowers that they were liable for deficiency balances when there was no obligation to pay such amounts, and falsely reported deficiencies as valid debts to credit reporting organizations;

    (e)    and whether CHRYSLER CAPITAL has, through false or misleading representations to the courts of this state, obtained judgments in violation of Civil Code § 2983.8.

36.    Proof of a common set of facts will establish CHRYSLER CAPITAL's liability and the right of each class member to recover.

37.    Plaintiff's claims are typical of those of the class which they represent, and they will fairly and adequately represent the interests of the class. Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

38.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impracticable and economically unfeasible for class members to seek redress individually. The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against Defendant, and would establish incompatible standards of conduct.

39.     The claims asserted by Plaintiff will be governed by the laws of the State of California and the injuries resulting from CHRYSLER CAPITAL's conduct were incurred in California.

### FIRST CAUSE OF ACTION
**(Violations of the Rees-Levering Automobiles Sales Finance Act, Civil Code § 2981, *et seq.*)**
**(Against CHRYSLER CAPITAL and applicable DOES)**

40.     Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above.

41.     The Rees-Levering Act regulates automobile sale and financing transactions for motor vehicles purchased primarily for personal or family purposes. The conditional sale contracts entered into by Plaintiff is subject to and governed by the provisions of the Rees-Levering Act. Defendant CHRYSLER CAPITAL is or was a "seller" or "holder" of said contracts as those terms are used in the statute.

42.     Defendant has engaged and is engaged in ongoing material violations of the Rees-Levering Act in that the Statutory Notices provided to Plaintiff and the class, ostensibly pursuant to Civil Code § 2983.2(a), did not contain the statutorily-mandated disclosures and information required by Civil Code § 2983.2(a). Thus CHRYSLER CAPITAL deprived Plaintiff and the class of substantial rights granted to them under the Rees-Levering Act, including the right to make an informed decision about whether to redeem/reinstate their contracts. In addition, because CHRYSLER CAPITAL has failed to provide Plaintiff and the class with all of the information and disclosures to which they were entitled under Civil Code § 2983.2(a), Plaintiff and the class are not liable, under the explicit terms of §§ 2983.2(a) and 2983.8 of the Rees-

Levering Act, for any deficiency following the disposition of their repossessed motor vehicles. Nevertheless, without any legal right to do so, Defendant maintains that Plaintiff and the class owe it for deficiency balances, and has collected, or attempted to collect, such deficiency balances.

43.     As a direct and proximate result of the acts hereinabove alleged and Defendant's ongoing unlawful conduct, Plaintiff and the class have been damaged in an amount to be proven at trial.

44.     Plaintiff seeks recovery of his attorneys' fees, costs and expenses incurred in the filing and prosecution of this action.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
**(Violations of Business and Professions Code § 17200 et seq.)**
**(Against CHRYSLER CAPITAL and applicable DOES)**

45.     Plaintiff realleges and incorporates herein by reference the allegations in each and every paragraph above.

46.     Plaintiff files this cause of action individually, and on behalf of the general public and as a class action, to challenge and to remedy Defendant's business practices. Business and Professions Code § 17200 et seq., often referred to as the "Unfair Competition Law," (hereinafter "the UCL") defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice. The UCL provides that a court may order injunctive relief and restitution to affected individuals as remedies for any violations of the UCL.

47.     Beginning on an exact date unknown to Plaintiff, but at all times relevant herein and during the four years preceding the filing of the complaint in this action, Defendant CHRYSLER CAPITAL has committed acts of unfair competition proscribed by the UCL, including the practices alleged herein. The acts of unfair competition include the following:

(a)     CHRYSLER CAPITAL violated and continues to violate the provisions of Civil Code § 2983.2(a) with respect to members of the class by failing to send them Statutory Notices that contain the disclosures mandated by that section;

///

(b)     CHRYSLER CAPITAL breached and continues to breach the terms of its uniform conditional sales contracts with class members by breaking its twin promises in the Form Agreements to (1) "provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle," and (2) "If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract."

(c)     CHRYSLER CAPITAL negligently misrepresented and continues to misrepresent orally to members of the class issued defective Statutory Notices or no notices at all that they are obligated to pay deficiency balances;

(d)     CHRYSLER CAPITAL fraudulently misrepresented and continues to misrepresent orally to members of the class issued defective Statutory Notices or no notices at all that they are obligated to pay deficiency balances;

(e)     CHRYSLER CAPITAL negligently misrepresented and continues to misrepresent in writing to members of the class sent defective Statutory Notices or no notices at all that they are obligated to pay deficiency balances;

(f)     CHRYSLER CAPITAL fraudulently misrepresented and continues to misrepresent in writing to members of the class sent defective Statutory Notices that they are obligated to pay deficiency balances;

(g)     CHRYSLER CAPITAL actively concealed and continues to conceal its unlawful activity from members of the class sent defective Statutory Notices or no notices at all;

(h)     CHRYSLER CAPITAL unlawfully, unfairly and/or fraudulently carried and continues to carry on its accounts records deficiency balances of members of the class issued defective Statutory Notices or no notices at all as amounts lawfully due and owing;

(i)     CHRYSLER CAPITAL unlawfully, unfairly and/or fraudulently reported and continues to report to credit reporting agencies the deficiency balances

allegedly owed by members of the class issued defective Statutory Notices or no notices at all as amounts lawfully due and owing;

(j)     CHRYSLER CAPITAL unlawfully, unfairly and/or fraudulently reported and continues to report to other third parties deficiency balances allegedly owed by members of the class issued defective Statutory Notices or no notices at all as amounts lawfully due and owing;

(k)     CHRYSLER CAPITAL unlawfully, unfairly and/or fraudulently collected and continues to collect deficiency balances from members of the class sent defective Statutory Notices or no notices at all;

(l)     CHRYSLER CAPITAL unlawfully, unfairly and/or fraudulently filed and continues to file lawsuits against members of the class issued defective Statutory Notices or no notices at all in order to collect deficiency balances; and

(m)     CHRYSLER CAPITAL unlawfully, unfairly and/or fraudulently misrepresented and continues to misrepresent its compliance with the provisions of Civil Code § 2983.2 to courts throughout the State of California and conceals its violations of the law.

48.     The business acts and practices of CHRYSLER CAPITAL as hereinabove alleged constitute unlawful business practices in that, for the reasons set forth above, said acts and practices violate the provisions of the Rees-Levering Automobile Sales Finance Act, Civil Code § 2981 *et seq.*, constitute systematic breaches of contracts and constitute violations of the common law.

49.     The business acts and practices of CHRYSLER CAPITAL, as hereinabove alleged, constitute unfair business practices in that said acts and practices offend public policy and are substantially injurious to consumers.  Said acts and practices have no utility that outweighs the substantial harm to consumers.

50.     The business acts and practices of CHRYSLER CAPITAL, as hereinabove alleged, constitute fraudulent business practices in that said acts and practices are likely to deceive the public and affected consumers as to their legal rights and obligations, and by use of

14

such deception, may preclude consumers from exercising legal rights to which they are entitled.

51.     The unlawful, unfair and fraudulent business acts and practices of CHRYSLER CAPITAL described herein present a continuing threat to Plaintiff and members of the class in that CHRYSLER CAPITAL is currently engaging in such acts and practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

52.     As a direct and proximate result of the acts and practices described herein, CHRYSLER CAPITAL has received and collected substantial monies or property from Plaintiff and members of the class to which it is not entitled.  Plaintiff has suffered injury in fact and has lost money or property as a result of the unlawful, unfair and fraudulent acts and practices of CHRYSLER CAPITAL challenged herein.

53.     Pursuant to Business and Professions Code § 17203, Plaintiff seeks an order enjoining CHRYSLER CAPITAL from engaging in such acts and practices as hereinabove alleged, and providing appropriate restitution to Plaintiff and the members of the class.

54.     In addition, pursuant to Code of Civil Procedure § 1021.5, Plaintiff seeks recovery of attorneys' fees, costs and expenses incurred in the filing and prosecution of this action.

WHEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

1.   For an order certifying the case as a class action;

2.   For an order finding and declaring Defendant CHRYSLER CAPITAL's acts and practices as challenged herein are unlawful, unfair and fraudulent;

3.   For an order preliminarily and permanently enjoining Defendant CHRYSLER CAPITAL from engaging in the practices challenged herein;

4.   For an order of restitution in an amount to be determined at trial to restore to all affected borrowers in interest, all money acquired by Defendant CHRYSLER CAPITAL by means of its unlawful, unfair and fraudulent practices, which amount is at least equal to all sums collected for alleged deficiency balances following the disposition of

repossessed motor vehicles;

5.   For an order that Defendant CHRYSLER CAPITAL shall send a letter to each of the credit reporting agencies instructing them to delete all references to the trade lines of class members, including, but not limited to any reference to repossessions, deficiency balances allegedly owed, and/or charge-offs of such balances;

6.   For such compensatory damages in an amount to be determined at trial, which amount is at least equal to all sums paid by Plaintiff and members of the class for alleged deficiency balances following the disposition of repossessed motor vehicles;

7.   For prejudgment interest to the extent permitted by law;

8.   For exemplary damages;

9.   For an award of attorneys' fees, costs and expenses pursuant to Civil Code § 2983.4, Code of Civil Procedure § 1021.5, and any other applicable provisions of law;

10.  For declaratory relief; and

11.  For such other and further relief as the Court may deem just and proper.

Dated: March 5, 2015                          KEMNITZER, BARRON, & KRIEG, LLP

                          By:   _____
                                     ADAM J. McNEILE

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 5, 2015                    KEMNITZER, BARRON & KRIEG, LLP

By:        _____
                ADAM J. McNEILE

**(WITH ARBITRATION PROVISION)**

| DEAL 86632 | Contract Number | R.O.S. Number | Stock Number 1161E |
|---|---|---|---|
| Dealer Number 68772 | | | |

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| STEVEN 7224 WOODWARD AVE TWENTYNINE PALMS CA 92277 SAN BERNARDINO COUNTY | JOHN P LEMAIOLI 74586 WELLOCK RD TWENTYNINE PALMS CA 92277 SAN BERNARDINO COUNTY | CRYSTAL CHRYSLER JEEP DODGE CE 36444 AUTO PARK DRIVE CATHEDRAL CITY, CA 92234 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the, Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2014 | DODGE DART | 18 | 1C3CDFBB5ED831808 | Personal, family or household unless otherwise indicated below. ☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $3000.00 |
|---|---|---|---|---|
| 22.92 % | $21291.81 (e) | $24585.87 | $46377.68 | $48877.68 |

(e) means an estimate

### YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due: |
|---|---|---|
| One Payment of | 500.00 | 07/09/2014 |
| One Payment of | N/A | N/A |
| One Payment of | N/A | N/A |
| 71 | 637.19 | Monthly beginning 07/29/2014 |
| N/A | N/A | N/A |
| One final payment | 637.19 | 06/29/2020 |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information.** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### ITEMIZATION OF THE AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

| | | |
|---|---|---|
| 1. Total Cash Price | | |
| A. Cash Price of Motor Vehicle and Accessories | $ 22434.00 | (A) |
| 1. Cash Price Vehicle | $ 21235.00 | |
| 2. Cash Price Accessories | $ 1199.00 | |
| 3. Other (Nontaxable) | $ | |
| Describe N/A | $ N/A | |
| Describe N/A | $ N/A | |
| B. Document Processing Charge (not a governmental fee) | $ 80.00 | (B) |
| C. Emissions Testing Charge (not a governmental fee) | $ N/A | (C) |
| D. (Optional) Theft Deterrent Device (to whom paid) N/A | $ N/A | (D) |
| E. (Optional) Theft Deterrent Device (to whom paid) N/A | $ N/A | (E) |
| F. (Optional) Theft Deterrent Device (to whom paid) N/A | $ N/A | (F) |
| G. (Optional) Surface Protection Product (to whom paid) N/A | $ N/A | (G) |
| H. (Optional) Surface Protection Product (to whom paid) N/A | $ N/A | (H) |
| I. EV Charging Station (to whom paid) N/A | $ N/A | (I) |
| J. Sales Tax (on taxable items in A through I) | $ 1801.12 | (J) |
| K. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (to whom paid) DEALERTRACK | $ 26.00 | (K) |
| L. (Optional) Service Contract (to whom paid) CENTURY SERVICE | $ 2500.00 | (L) |
| M. (Optional) Service Contract (to whom paid) N/A | $ N/A | (M) |
| N. (Optional) Service Contract (to whom paid) N/A | $ N/A | (N) |
| O. (Optional) Service Contract (to whom paid) N/A | $ N/A | (O) |
| P. (Optional) Service Contract (to whom paid) N/A | $ N/A | (P) |
| Q. Prior Credit or Lease Balance paid by Seller to _____ (see downpayment and trade-in calculation) N/A | $ | (Q) |
| R. (Optional) Gap Contract (to whom paid) PARTNERS ALLIANCE | $ 500.00 | (R) |
| S. (Optional) Used Vehicle Contract Cancellation Option Agreement | $ N/A | (S) |
| T. Other (to whom paid) N/A | $ | (T) |
| For N/A | $ N/A | |
| Total Cash Price (A through T) ESTIMATE | $ 27341.12 | (1) |
| 2. Amounts Paid to Public Officials | | |
| A. Vehicle License Fees | $ 138.00 | (A) |
| B. Registration/Transfer/Titling Fees | $ 98.00 | (B) |
| C. California Tire Fees | $ 8.75 | (C) |
| D. Other N/A | $ | (D) |
| Total Official Fees (A through D) | $ 244.75 | (2) |

## STATEMENT OF INSURANCE

**NOTICE.** No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

| | | | | |
|---|---|---|---|---|
| N/A Ded. Comp, Fire & Theft | | N/A Prem $ N/A | |
| N/A Ded. Collision | | | N/A |
| Bodily Injury | N/A Limits | N/A | $ N/A |
| Property Damage | N/A Limits | N/A | $ N/A |
| Medical | | | $ N/A |

Total Vehicle Insurance Premiums $ N/A

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _____

Co-buyer X _____

Seller X **CRYSTAL CHRYSLER JEEP DOD**

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Application for Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability (Buyer Only)

| | | |
|---|---|---|
| Credit Life N/A Mos. N/A | Term N/A | Exp. N/A | Premium |
| Credit Disability N/A Mos. N/A | | $ N/A |
| Total Credit Insurance Premiums | | $ N/A |

Insurance Company Name N/A

Home Office Address N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday, (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date, (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to Total Disabilities Not Covered" in your policy for details).

You want to buy the credit insurance.

| Date | Buyer Signature | Age |
|---|---|---|
| Date | Co-Buyer Signature | Age |

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 1R of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos.

Name of Gap Contract PARTNERS ALLIAN

Form _____

## EXHIBIT A

| | | Buyer Signs X | |
|---|---|---|---|

4. □ State Emissions Certification Fee or □ State Emissions Exemption Fee ..... $ N/A

5. Subtotal (1 through 4) .......................................................... $ 27585.87 (5)

6. Total Downpayment:

A. Agreed Trade-In .... Yr. N/A .... Make N/A ....... $ N/A (A)
Model N/A ................... Odom. N/A
VIN N/A

B. Less Prior Credit or Lease Balance (e) ........... $ N/A (B)

C. Net Trade-In (A less B) (indicate if a negative number) ........ $ 500.00 (C)

D. Deferred Downpayment ...................... $

E. Manufacturer's Rebate .......................... $ 2000.00 (E)

F. Other N/A .......................... $ N/A (F)

G. Cash ............................................. $ 500.00 (G)

Total Downpayment (C through G) .......... $ 3000.00 (6)

(if negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1Q above)

7. Amount Financed (5 less 6) ......................... $ 24585.87 (7)

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1L, 1M, 1N, 1O, and/or 1P.

| 1L Company | CENTURY SERVICE | | |
|---|---|---|---|
| Term | 72 | Mos. or | 60000 | Miles |
| 1M Company | N/A | | |
| Term | N/A | Mos. or | N/A | Miles |
| 1N Company | N/A | | |
| Term | N/A | Mos. or | N/A | Miles |
| 1O Company | N/A | | |
| Term | N/A | Mos. or | N/A | Miles |
| 1P Company | N/A | | |
| Term | N/A | Mos. or | N/A | Miles |
| Buyer X | | | |

**SELLER-ASSISTED LOAN**
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan From N/A

Amount $ N/A Finance Charge $ N/A

Total $ N/A

Installments of $ N/A Pay. No. N/A

from this Loan is shown in item 6D

**AUTO BROKER FEE DISCLOSURE:**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

□ Name of autobroker receiving fee, if applicable: N/A

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X

Co-Buyer Signs X

**SELLER'S RIGHT TO CANCEL.** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

X _____  Co-Buyer _____

Buyer

Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____  Co-Buyer Signs X _____

OPTION: □ You pay no insurance charge if the Amount Financed, item 7, is paid in full on or before _____ , _____ Year _____ SELLER'S INITIALS ____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

WARNING:
- YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
- FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X _____  _____

Trade-In Payoff Agreement: Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 6B of the itemization of Amount Financed as the "Prior Credit or Lease Balance." You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown in 6B to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown in 6B, you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 6B, Seller will refund to you the overage. Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on the back of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in 6B or any refund.

Buyer Signature X _____  Co-Buyer Signature X _____

Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.

Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.

After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _____  Co-Buyer Signature X _____

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION.**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X _____  Date 06/14/14  Co-Buyer Signature X _____  Date 06/14/14

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X _____

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.

Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X _____  Date 06/14/14  Guarantor X _____  Date 06/14/14

Address _____  Address _____

Seller Sign X CRYSTAL CHRYSLER JEEP DODGE CE  Date 06/14/14  By X _____  Title MGR

LAW FORM NO. 553-CA-ARB (REV. 3/13) U.S. PATENT NO. D453,782
©2013 The Reynolds and Reynolds Company TO ORDER: www.reyrey.com 1-800-344-0996 or 1-800-877-6003
THIS PRINTER MAY NOT WARRANT, GUARANTEE OR IMPLIED. AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

DEALER COPY

## 1. FINANCE CHARGE AND

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller-Creditor may receive part of the Finance Charge.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000 or (3) $75 if the original Amount Financed is more than $2,000.

## 2. YOUR OTHER PROMISES TO US.

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**GAP LIABILITY NOTICE.** In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and, deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional gap contract (debt cancellation contract) for coverage of the gap amount may be offered for an additional charge.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security interest.** You give us a security interest in:
- The vehicle and all parts or goods installed on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all

**We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on the face of this contract, not to exceed the highest rate permitted by law, until you repay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total-loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

## 5. Used Car Buyers Guide.
The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## 6. Servicing and Collection Contacts.
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

## 7. Applicable Law.
Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

## 8. Warranties of Buyer.
You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

## CREDIT DISABILITY INSURANCE NOTICE
## CLAIM PROCEDURE
If you become disabled, you must tell us right away. You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified. We will tell you when to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial

- You give false, incomplete, or misleading information on a credit application.
- You start a proceeding in bankruptcy or one is started against you or your property.
- The vehicle is lost, damaged or destroyed; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay our collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle if we take your vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back.** If we take the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying all your past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay, and/or what action you must take to redeem the vehicle.

---

disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given. If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.

b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

---

## ARBITRATION PROVISION

### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

---

| Seller assigns its interest in this contract to | | (Assignee) at [address] |
|---|---|---|
| | | under the terms of Seller's agreement(s) with Assignee. |
| 1. ☐ Assigned with recourse | 2. ☐ Assigned without recourse | 3. ☐ Assigned with limited recourse |
| Seller | By | Title |

Form No. 553-CA-ARB 7/13

12/19/2014   09:59 Office Supply Plus                    (FAX)17603613300           P.003/006



**CHRYSLER**
C A P I T A L

Chrysler Capital
8585 N. Stemmons Frwy, #1100 N
Dallas, TX 75247
(855) 563-5635

### NOTICE OF INTENTION TO DISPOSE OF MOTOR VEHICLE

Date: 12/11/2014

JOHN LEGNAIOLI                          STEVEN D MARTINEZ
PO BOX 358                              7224 WOODWARD AVE
TWENTYNINE PALMS, CA 92277-0358         TWENTYNINE PALM, CA 92277

Re:     Account No. 30000123841511000
        Retail Installment Sale or Credit Sale Contract or Note and Security Agreement dated 06/14/2014
        2014 // DODGE // DART // VIN 1C3CDFBB5ED831808

Dear JOHN LEGNAIOLI:

### Notice Of Our Plan To Sell Property

We have your Vehicle because you broke promises in our Agreement. We intend to dispose of the Vehicle as explained in this Notice subject to your right to get the Vehicle back (redeem, or reinstate, if applicable) as described in this Notice. [The checked box below applies to you.]

☒     Private Sale:  We will sell the Vehicle at private sale sometime after 01/03/2015. A sale could include a lease or license.

☐     Public Sale:  We will sell the Vehicle beginning on _____ by offering it for retail sale or lease to the general public through:

☐     Dealer Name: _____ Dealer Address: _____. You may inspect the Vehicle and encourage people to purchase or lease it.

☐     Advertising it for sale to the general public to be purchased from _____ at _____. You may inspect the Vehicle and encourage people to purchase it.

•           •           •

You have a right to request an extension of this time of ten (10) more days (see Right to Request an Extension of Time, below).

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else. You can get the Vehicle back at any time before we sell it by paying us the full amount you owe (not just the past due payments) including our expenses.

If you need more information about the sale call us at the telephone number shown at the top of this Notice or write to us at the address shown at the top of this Notice.

We are sending this Notice to each of the people who owe money under the Agreement, as shown at the top of this Notice, or people who have an interest in the Vehicle and who are not shown at the top of this Notice: STEVEN D MARTINEZ



8585 N. Stemmons Frwy, #1100 N, Dallas, TX 75247                                      CA-NOI-432_27999_050713
©2013 Chrysler Capital. Chrysler Capital is a trademark of Chrysler Group LLC and licensed to Santander Consumer USA Inc.

## EXHIBIT _B_

**Reinstatement and Redemption**

You are in default under the Agreement as follows (select applicable provision(s)):

☒ Failure to make payment(s) due under the Agreement.
☐ Failure to keep the Vehicle free from encumbrances and liens.
☐ Failure to keep and maintain insurance on the Vehicle.
☐ Failure to perform other obligations under the Agreement

_____
[Describe]

**Right to Reinstate**

☒ If checked, you have the right to reinstate the Agreement and get back the Vehicle. To reinstate, you must do the following (below) within 15 days of the date of this Notice (20 days if this Notice is mailed outside of California or the address of any of the persons liable on this Agreement is outside of California). You have the right to request an extension of the time of 10 additional days. If you request an extension of time (see below), we will extend the time without further notice to you. Your cure of the default must be made to us at our address shown at the top of this Notice.

☒ Pay the Total Amount Now Due:

| | | |
|---|---|---|
| Past due payments: | | $2,548.76 |
| Unpaid late fees: | + | $127.40 |
| Repossession expense: | + | $405.00 |
| Attorney's Fees: | + | $0.00 |
| Legal expenses: | + | $0.00 |
| Storage/Admin Fee: | + | $150.00 |
| **Total Amount Now Due**: | = | **$3,231.16** |

☐ Other action needed to cure default

_____
[Describe]

To reinstate your contract, you must pay the following amounts in addition to the Total Amount Now Due, which will come due during the reinstatement period (and, if applicable, extension period):

| | |
|---|---|
| Payment(s) to come due: | $637.19 |
| Each late charge: | $31.85 |

(If you do not make a payment to come due
within the grace period, you will also be charged
the late charge - see your Agreement for details)

Location of Storage:
Name/address:     CA-92262 PALM SPRINGS
                  2050 EXECUTIVE DRIVE STE D
                  PALM SPRINGS, CA 92262

Fee charged by law enforcement:                    $15.00
Name/address:     SAN BERNARDINO COUNTY SHERIFF
                  655 E THIRD ST
                  SAN BERNARDINO, CA 92415
                  (909) 387-3545

Other: [describe] _____     _____

The amount needed to reinstate the Agreement will include these amounts, as applicable.



8585 N. Stemmons Frwy, #1100 N, Dallas, TX 75247                          CA-NOI-432_27999_050713
©2013 Chrysler Capital. Chrysler Capital is a trademark of Chrysler Group LLC and licensed to Santander Consumer USA Inc.

### No Right to Reinstate

☐   If checked, you do not have the right to reinstate the Agreement because [insert statutory reason].

---

### Right to Redeem

You have the right to redeem (get back) the Vehicle at any time up until the date we sell the Vehicle, or the date we enter into a contract for its sale, by paying to us at our address shown at the top of this Notice the Total Outstanding Now Due as set forth below (not just the past due payments). This date will be at least 15 days from the date of this Notice (20 days if this Notice is mailed outside of California or the address of any of the persons liable on this Agreement are outside of California). You have the right to request an extension of the time of 10 additional days. If you request an extension of time (see below), we will extend the time without further notice to you.

| | | |
|---|---|---|
| Contract balance: | | $24,585.87 |
| Accrued Interest: | + | $2,141.75 |
| Unpaid late fees: | + | $127.40 |
| Other: [describe] _____ | + | $0.00 |
| Repossession expense: | + | $405.00 |
| Attorney's fees: | + | $0.00 |
| Legal expenses | + | $0.00 |
| Storage/Admin Fee: | + | $150.00 |
| Subtotal: | = | $27,410.02 |
| Less unearned finance charge: | - | $0.00 |
| Less unearned insurance charge: | - | $0.00 |
| Less other: [describe] _____ | - | $0.00 |
| **Total Outstanding Now Due** | = | **$27,410.02** |

To redeem the Vehicle, you must also pay the following amounts, in addition to the Total Outstanding Now Due; which will come due during the redemption period (and, if applicable, extension period). You may call us at the telephone number at the top of this notice to confirm the exact amount due on the date you redeem.

Interest on the unpaid principal at the annual percentage rate of 22.92%.

Location of Storage:
Name/address:     CA-92262 PALM SPRINGS
                  2050 EXECUTIVE DRIVE STE D
                  PALM SPRINGS, CA 92262

Fee charged by law enforcement, if applicable:                          $15.00
Name/address:     SAN BERNARDINO COUNTY SHERIFF
                  655 E THIRD ST
                  SAN BERNARDINO, CA 92415
                  (909) 387-3545

Other: [describe] _____         _____

### Location of Vehicle

If you have the right to reinstate and you reinstate the Agreement, or if you redeem the Vehicle it will be returned to you at:

CA-92262 PALM SPRINGS 2050 EXECUTIVE DRIVE STE D PALM SPRINGS, CA 92262.



8585 N. Stemmons Frwy, #1100 N, Dallas, TX 75247                                    CA-NOI-432_27999_050713
©2013 Chrysler Capital. Chrysler Capital is a trademark of Chrysler Group LLC and licensed to Santander Consumer USA Inc.

12/19/2014   10:00 Office Supply Plus                    (FAX)17603613300          P.006/006

## Written Accounting

We will provide you with a written accounting following sale of the Vehicle. If there is a surplus, it will be paid to you within 45 days of the date of sale unless we are required by law to pay it to someone else. You may request another written accounting from Chrysler Capital at the address shown at the top of this Notice within one year of the date of the sale by delivering to us or mailing to us your written request by first class mail, postage prepaid, or certified mail, return receipt requested.

**NOTICE: YOU MAY BE SUBJECT TO SUIT AND LIABILITY IF THE AMOUNT OBTAINED UPON DISPOSITION OF THE VEHICLE IS INSUFFICIENT TO PAY THE CONTRACT BALANCE AND ANY OTHER AMOUNTS DUE.**

Upon disposition of the Vehicle, you will be liable for any deficiency balance plus interest at the contract rate, or at the legal rate of interest pursuant to California Civil Code Section 3289 if there is no contract rate of interest, from the date of disposition of the Vehicle to the date of entry of judgment.

Sincerely,

We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

Mark Mooney
VP, Loss Mitigation

NOTICE: If you are entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the subject matter of this letter, the following applies to you: THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT, ASSESS, OR RECOVER A CLAIM IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY.

CHRYSLER CAPITAL IS A DEBT COLLECTOR UNLESS THE NOTICE ABOVE APPLIES TO YOU. THIS IS AN ATTEMPT TO COLLECT YOUR DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Chrysler Capital can report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

Chrysler Capital is a trademark of Chrysler Group LLC and licensed to Santander Consumer USA Inc.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - <cut here> - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## Right to Request an Extension of Time

You (the borrower) must either personally serve this Request on us or send it to us by certified or registered mail, return receipt requested, in either case, to the address listed above. If we receive this Request within 15 days of the date of this Notice (20 days if this Notice is mailed outside of California or the address of any of the persons liable on this contract is outside of California), we will extend the time to reinstate the contract, if you have that right, or to redeem the vehicle, for 10 days.

To: _____

_____

Your Name_____     Account No. _____

Signature _____     Date _____



8585 N. Stemmons Frwy, #1100 N, Dallas, TX 75247                              CA-NOI-432_27999_050713
©2013 Chrysler Capital. Chrysler Capital is a trademark of Chrysler Group LLC and licensed to Santander Consumer USA Inc.


**CHRYSLER**
C A P I T A L

Chrysler Capital
P.O. Box 961275
Fort Worth, TX 76161-1275
(855) 563-5635

## Explanation of Calculation of Surplus or Deficiency

Date: 02/15/2015

JOHN LEGNAIOLI
PO BOX 358
TWENTYNINE PALMS, CA 92277-0358

Re:   Account No. 30000123841511000
      Retail Installment Sale or Credit Sale Contract dated 06/14/2014 ("Agreement")
      2014 // DODGE // Dart // VIN 1C3CDFBB5ED831808 ("Vehicle")

Dear JOHN LEGNAIOLI:

Please be advised that we disposed of the Vehicle on 01/22/2015. The proceeds of the sale have been applied as explained below. If you financed a premium for credit insurance under your Agreement, you may be entitled to a refund of any unearned portion of the premium.

| | | | | | |
|---|---|---|---|---|---|
| 1. | Aggregate unpaid balance of Agreement as of 02/15/2015 | | $27,091.83 | | |
| 2. | Rebate of unearned finance charges as of 02/15/2015, if any | - | $0.00 | | |
| 3. | Accrued and unpaid late fees | + | $127.40 | | |
| 4. | Net balance due (1 minus 2 plus 3) | | | = | $27,219.23 |
| 5. | Gross proceeds from the sale of the Vehicle | - | $13,300.00 | | |
| 6. | Subtotal after deducting proceeds of sale (4 minus 5) | | | = | $13,919.23 |
| 7. | Costs of retaking the Vehicle | | $405.00 | | |
| 8. | Costs of storing the Vehicle | + | $0.00 | | |
| 9. | Costs of preparing the Vehicle for sale | + | $0.00 | | |
| 10. | Costs of selling the Vehicle | + | $441.00 | | |
| 11. | Attorneys' fees and court costs | + | $0.00 | | |
| 12. | Other costs: | + | $0.00 | | |
| 13. | Total Costs (7 through 12) | | | = | $846.00 |
| 14. | Credit: Rebate of unearned insurance premiums | | $0.00 | | |
| 15. | Credit: | + | $0.00 | | |
| 16. | Credit: | + | $0.00 | | |
| 17. | Total Credits (14 through 16) | | | = | $0.00 |
| 18. | Balance due/surplus after sale (6 plus or minus 13, plus or minus 17) | | | = | $14,765.23 |


# EXHIBIT   C

(The checked box applies to you).

☑ Deficiency balance for which you are liable and for which demand* is hereby made $14,765.23. **

☐ Surplus balance to be remitted to you $0.00. **

☐ Surplus balance paid to a subordinate party $0.00.

**Future debits, credits, charges, finance charges or interest, rebates or other expenses may affect this amount.

If you need more information about the transaction, contact us: Chrysler Capital, P.O. Box 961275, Fort Worth, TX 76161-1275, (855) 563-5635.

Sincerely,

Chrysler Capital

* NOTICE: If you are entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the subject matter of this letter, the following applies to you: THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT A DEBT FROM YOU PERSONALLY IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY.

CHRYSLER CAPITAL IS A DEBT COLLECTOR UNLESS THE NOTICE ABOVE APPLIES TO YOU. THIS IS AN ATTEMPT TO COLLECT YOUR DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Chrysler Capital can report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

